IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TONY P.,[1]
    Plaintiff,

v.   Civil No. 3:21-cv-529 (REP)

KILOLO KIJAKAZI,
Acting Commissioner of the Social
Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

    This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability insurance benefits, disability insurance, and supplemental security income under the Social Security Act (the "Act"). Plaintiff was fifty-eight years old at the time of his application and has previous employment as a warehouse worker. (R. at 248-58, 267.) Plaintiff alleges he is unable to work due to major depressive disorder, generalized anxiety disorder, and back and arm problems. (R. at 266.)

    On February 10, 2021, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 15-30.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further

1

Plaintiff seeks review of the ALJ's decision, arguing that the ALJ's residual functional capacity determination is not supported by substantial evidence because he failed to properly assess the medical opinion evidence of the psychological consultative examiner in accordance with 20 C.F.R. § 416.920c. (Pl.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 21 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 20) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability insurance, disability insurance, and supplemental security income on August 9, 2019, alleging disability beginning February 11, 2019. (R. at 248-58.) The Social Security Administration ("SSA") denied Plaintiff's claims on February 3, 2020, and again upon reconsideration on April 22, 2020. (R. at 75, 94, 112-113, 130-31.) Plaintiff requested a hearing before an ALJ, and a hearing was held on February 2, 2021. (R. at 36-57, 245-47.) On February 10, 2021, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 15-30.) Plaintiff requested review of the ALJ's decision. (R. at 5.) On June 11, 2021, the SSA Appeals Council denied the request which rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-5.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).[3]

---

restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§

3

404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. §§ 404.1545(a), 416.920(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 15-30.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 11, 2019. (R. at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) anxiety; (2) depression; and (3) degenerative disc disease of the lower spine. (R. at 18.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. at 19.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 21-22.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that:

> [He] would be limited to jobs that do not require the use of ropes, ladder or scaffolds. [Plaintiff] could occasionally climb ramps and steps. [Plaintiff] could occasionally balance, crouch, stoop, kneel, crawl, and bend. [Plaintiff] would be limited to jobs that do not have exposure to dangerous machinery or moving machine parts, as well as unprotected heights. [Plaintiff] would be capable of work with simple, routine, and repetitive instructions in low stress jobs, which are jobs that [the ALJ] define[s] as goal-oriented and not done at an assembly line or at a production-quota pace; a job in which [Plaintiff] is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine; and a job in which [Plaintiff] has only occasional contacts with supervisors, coworkers, and customers.

(R. at 21-22.)

The ALJ explained that he determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior administrative medical findings, in accordance with the regulations. (R. at 22.) Based on his residual functional capacity findings, the ALJ concluded at step four that Plaintiff is unable to perform his past relevant work as a warehouse worker. (R. at 28-29.) At step five, the ALJ explained that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering Plaintiff's age, education, work experience, and residual functional capacity. (R. at 29-30.) In making his findings, the ALJ considered the vocational expert's testimony, who opined that Plaintiff could perform the requirements of representative occupations such as a cleaner, laundry worker, and equipment cleaner. (R. at 29-30.) Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (R. at 30.)

## IV. ANALYSIS

Plaintiff requests remand asserting the ALJ improperly evaluated the medical opinion evidence of psychological consultative examiner Susan Belyea, Ph.D. ("Dr. Belyea"). (Pl.'s Mem. at 1, 6-13.) Plaintiff contends that the ALJ failed to address the supportability and consistency factors in his evaluation of Dr. Belyea's opinion. As a result, Plaintiff argues that the ALJ's residual functional capacity determination was improper. (Pl.'s Mem. at 6-13.)

Defendant responds that the ALJ's residual functional capacity is not flawed as the ALJ properly evaluated the medical opinion of Dr. Belyea. ((Def.'s Mot. Summ. J. 9-12, (ECF No. 23) ("Def.'s Mem.").) For the reasons that follow, this Court finds that the ALJ did not err in his assessment of the medical opinion evidence, and substantial evidence supports the ALJ's decision to find Plaintiff not disabled under the Act.

### A. The ALJ Did Not Err in His Evaluation of Dr. Belyea's Medical Opinion.

Plaintiff argues that the ALJ failed to provide any meaningful analysis when he found Dr. Belyea's opinion was partially persuasive. (Pl.'s Mem. at 6-13.) Defendant responds that the ALJ appropriately assessed Dr. Belyea's medical opinion based on the supportability and consistency factors set forth in the regulations, and substantial evidence supports the ALJ's findings. (Def.'s Mem. at 9-12.)

#### 1. The Revised Regulations for Evaluating Medical Opinion Evidence.

As an initial matter, for claims filed on or after March 27, 2017, revised regulations change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight...to any medical opinion(s) . . . ." *Revisions to Rules*,

2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

Under the regulations,[4] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)– (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both

---

[4] Because Plaintiff filed his disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

    2. *Dr. Belyea's Opinion.*

Dr. Belyea examined Plaintiff on December 17, 2019. (R. at 373.) On January 4, 2020, Dr. Belyea filled out a statement in which she provided her medical opinion about Plaintiff's ability to do work-related activities. (R. at 373-378.) In crafting her opinion, she examined Plaintiff and reviewed Plaintiff's medical notes from Primary Health Associates, and emergency room notes from November 8, 2018. (R. at 373.) Dr. Belyea opined that Plaintiff had mild impairments to perform simple and repetitive tasks. (R. at 378.) She found Plaintiff had moderate impairments in his ability to perform detailed and complex tasks. (R. at 378.) Dr. Belyea also concluded Plaintiff had marked impairments to: (1) complete a normal full-time workday/workweek without interruptions; and (2) perform work activities without special or additional supervision. (R. at 378.) Further, Dr. Belyea found Plaintiff had severe difficulty accepting instructions and interacting with the public and coworkers. (R. at 378.) Finally, Dr. Belyea found that Plaintiff's ability to deal with the usual stress found in competitive work to be extremely impaired. (R. at 378.)

    3. *The ALJ's Assessment of Dr. Belyea's Opinion.*

Plaintiff argues that the ALJ mischaracterized the record and that he did not address the evidence that was consistent with or supported by Dr. Belyea's opinion. (Pl.'s Mem. 9-13.) Defendant responds by asserting that the ALJ followed the regulatory framework and substantial evidence supports his residual functional capacity finding. (Def.'s Mem. at 11.) Further, Defendant notes that the ALJ discussed evidence consistent with Dr. Belyea's opinion. (Def.'s Mem. at 12.) Specifically, Defendant maintains that the ALJ specifically considered "that Plaintiff displayed

8

anxiety and depression as well as impairments to his mood, affect, memory, and concentration during the consultative examination." (Def.'s Mem. at 12, citing R. at 28.)

The ALJ considered the objective medical evidence and other evidence and discussed Plaintiff's mental health impairments at length throughout his opinion. (R. at 19-21, 28.) The ALJ discussed Dr. Belyea's assessment of Plaintiff's mental impairments when discussing the paragraph B criteria and when reviewing the opinion evidence. (R. at 19-21, 27-28.)

The ALJ summarized Dr. Belyea's findings and found them partially persuasive. (R. at 27.) He noted that Dr. Belyea's findings were largely based on Plaintiff's self-reported symptoms. (R. at 28.) The ALJ stated that while the records supported some limitations, they did not support the degree of limitation asserted by Dr. Belyea. (R. at 28.) The ALJ supports this analysis by noting that Plaintiff: (1) had minimal mental health treatment; and (2) "vehemently denied being depressed" at his emergency department visit in November 2018. (R. at 28.) After reviewing the record, evidence, and opinions, the ALJ found Plaintiff did not have greater than a moderate limitation in any of the "paragraph B" criteria. (R. at 28.)

When determining Plaintiff's limitations under paragraph B, the ALJ first looked at Plaintiff's ability to understand and remember or apply information. (R. at 19.) The ALJ determined there was only a moderate limitation. (R. at 19.) At his examination with Dr. Belyea, Plaintiff exhibited slight impairments to his memory, and his ability to process abstract information was below normal limits. (R. at 19, citing R. at 373-379.) Plaintiff asserted he was able to follow written and spoken instructions well. (R. at 19, citing 287, 295.) In Dr. Belyea's report, Plaintiff's thought process was found to be "linear, logical, and goal-oriented[.]" (R. at 19, citing 373-79.) Dr. Belyea also found Plaintiff did not have significant recent memory problems. (R. at 19, citing 373-79.) The ALJ discussed how this was supported by Plaintiff's denial of memory issues on

9

multiple occasions. (R. at 19-20, citing R. at 366, 368.) Therefore, the ALJ found that Plaintiff only had a moderate limitation in this area. (R. at 20.)

The ALJ addressed Plaintiff's ability to interact with others. (R. at 20.) The ALJ found Plaintiff had a moderate limitation in his ability to interact with others. (R. at 20.) In making this determination, the ALJ noted Plaintiff's assertion that he had some difficulty getting along with others. (R. at 20, citing 287, 295.) Plaintiff also stated, "he gets along well with authority figures." (R. at 20, citing 288, 296.) At his appointment with Dr. Belyea, Plaintiff was found to have adequate eye contact, his speech was coherent, and he was cooperative. (R. at 20, citing 373-79.) After reviewing the record and various opinions, the ALJ found Plaintiff only had a moderate limitation in his ability to interact with others. (R. at 20.)

The ALJ also addressed Plaintiff's ability to concentrate, persist, or maintain pace. (R. at 20.) The ALJ found Plaintiff had a moderate limitation. (R. at 20.) Plaintiff alleged he had difficulty paying attention for long periods of time. (R. at 20, citing 287, 295.) Dr. Belyea opined that Plaintiff's attention and concentration were slightly below normal limits when she examined him. (R. at 20, citing 376.) Further, the ALJ noted that Plaintiff asserted he is able to finish things that he starts and has denied issues concentrating at times. (R. at 20 citing 287, 295, 365.) Therefore, the ALJ found that Plaintiff only had a moderate limitation with his ability to concentrate, persist, or manage pace. (R. at 20.)

The ALJ reviewed Plaintiff's ability to adapt and manage himself. (R. at 20-21.) The ALJ found Plaintiff had a moderate limitation. (R. at 20.) Plaintiff alleged that he did not handle stress or changes in routine well. (R. at 20, citing R. at 288, 296) Dr. Belyea noted Plaintiff had exhibited some mood instability during the mental status examination. (R. at 20, citing 376.) Further, Plaintiff had gone to the emergency department due to difficulties at work. (R. at 20, citing R. at

357-62.) Plaintiff denied any depressive symptoms during his visit to the emergency department. (R. at 20, citing R. at 357-62.) Plaintiff is able to work around the house, prepare meals, do yard work, drive a car, shop, manage his own money, and has no problems performing his acts of personal care. (R. at 20, citing R. at 282-97.) Further, at Dr. Belyea's examination, Plaintiff denied perceptual disturbances, active suicidal or homicidal ideations. (R. at 20, citing 373-78.) Therefore, the ALJ concluded Plaintiff only had a moderate limitation in this functional area. (R. at 20-21.)

Considering the opinion as a whole, the ALJ discussed both the evidence that supports and conflicts with Dr. Belyea's opinion. (R. at 20-28.) For example, Dr. Belyea noted Plaintiff had exhibited some mood instability during his mental status examination. (R. at 20, citing 376.) However, the ALJ also discussed Plaintiff's denial of any depressive symptoms at his emergency department visit. (R. at 20, citing R. at 357-62.) At the emergency department visit on November 8, 2018, Plaintiff reported to the doctor that he had insomnia, but he is "quite happy most of the time." (R. at 359.) The doctor noted Plaintiff had no anxiety or depression, he was alert and was cooperative with appropriate mood and affect. (R. at 359-61.) According to the examining doctor, Plaintiff did "not meet the criteria for an emergent psychiatric consultation or admission." (R. at 361.) Plaintiff then followed up with his primary care provider a month later. (R. at 365.) Plaintiff reported that he had no difficulty falling and staying asleep with medication. (R. at 365.) His doctor noted that Plaintiff's depression was in remission. (R. at 365.) Plaintiff reported to his doctors that he did not have "feelings of anxiety, suicide, and mood changes." (R. at 366, 368.) Further, when examined by his provider he was found to have normal mood and affect. (R. at 366, 403.) Plaintiff has only seen a therapist once. (R. at 43.) He is able to take public transportation alone and go grocery shopping alone. (R. at 46-47.)

11

The ALJ addressed the supportability and consistency of Dr. Belyea's opinion in accordance with the regulations. In addition, the ALJ found Dr. Belyea's opinion partially persuasive because it was not consistent with the medical record and Plaintiff's asserted abilities. A review of the record indicates that the ALJ built a logical bridge from the evidence to his conclusion, as the records indicate instances in which Plaintiff reported abilities beyond Dr. Belyea's assessed limitations, and the records conflicted with Dr. Belyea's opinion.

The regulations require that the ALJ explain how he considered the consistency and supportability of the medical opinion and why—based on the evidence—the ALJ reached the particular conclusion he did as to the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a)–(b). Considering the ALJ's opinion as a whole, he satisfied that standard here. Upon review of the record and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's conclusion that Dr. Belyea's opinion was partially persuasive.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 20) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                                    /s/ MRC
                                                               Mark R. Colombell
                                                               United States Magistrate Judge

Richmond, Virginia
Date: <u>July 11, 2022</u>